IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JOSEPH YOUNG,

    *Petitioner*,

    v.

UNITED STATES OF AMERICA,

    *Respondent.*

Criminal No. ELH-13-0151 (#25)
Related Civil No.:  ELH-19-2174

## MEMORANDUM OPINION

This Memorandum Opinion resolves a motion to vacate under 28 U.S.C. § 2255, filed in July 2019 by Joseph Young, the self-represented Petitioner.  ECF 2159 (the "Petition").  The government opposes the Petition.  ECF 2164.  Young has replied.  ECF 2166.

No hearing is necessary to resolve the Petition.  For the reasons that follow, I shall deny the Petition.

### I.       Factual and Procedural Background

#### A.  Summary

At the relevant time, Young was a member of a gang known as the Black Guerilla Family ("BGF").  In 2013, Young was one of 44 defendants indicted on charges that included racketeering conspiracy, in violation of 18 U.S.C. § 1962(d), under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*  He was also charged with conspiracy to distribute and possess with intent to distribute controlled dangerous substances, in violation of 21 U.S.C. § 846, and money laundering conspiracy, under 18 U.S.C. § 1956(h).

The criminal charges were rooted in a pervasive criminal enterprise at the Baltimore City Detention Center ("BCDC"), a facility for pretrial detainees.  The defendants generally consisted of two groups:  BGF members who were inmates at BCDC, and corrupt correctional officers who

worked at BCDC and helped to facilitate the enterprise. The Second Superseding Indictment (ECF 869), which was the operative charging instrument, alleged that the racketeering enterprise spanned the period from 2007 to November 2013. *Id.* ¶ 11 at 6.[1]

Eight of the defendants, including Young, proceeded to a jury trial at which Judge J. Frederick Motz presided.[2] The trial began on November 17, 2014. On February 5, 2015, Young was convicted on all charges. Four other defendants were also convicted. ECF 1425; ECF 1426. Two of the five defendants who were found guilty were BGF gang members who had been inmates at BCDC. The other three were correctional officers who worked at BCDC.

On June 24, 2015, Judge Motz sentenced Young to a total term of imprisonment of fifteen years. *See* ECF 1709 (Judgment, docketed 6/30/15). On appeal to the Fourth Circuit, the court affirmed all of the convictions but vacated Young's sentence and remanded for resentencing. ECF 1992; *see United States v. Carrington, et al.*, 700 F. App'x 224 (4th Cir. 2017). I presided at the resentencing.[3] In connection with the resentencing, I held several hearings and issued a lengthy Memorandum Opinion. *See* ECF 2085.

---

[1] Citations refer to the electronic pagination as it appears on CM/ECF.

[2] This case was assigned to me at the time of indictment. I ruled on many pretrial motions, took many guilty pleas from codefendants, and conducted sentencing proceedings for the many codefendants who did not proceed to trial. However, Judge Motz presided at the trial, and therefore he sentenced Young. *See United States v. Carrington, et al.*, 700 Fed. App'x 224, 225 (4th Cir. 2017). On appeal, the Fourth Circuit upheld Young's convictions but vacated his sentence and remanded for resentencing. Due to the retirement of Judge Motz, I presided at the resentencing. *See* ECF 2089. On January 9, 2019, the Fourth Circuit affirmed the sentence. ECF 2144. The mandate issued on January 31, 2019. ECF 2147.

[3] At trial, on appeal, and in regard to the resentencing, Young was represented by the same attorney.

On March 28, 2018, I sentenced Young to a guidelines sentence of 170 months' imprisonment.  *See* ECF 2089; ECF 2091 (Amended Judgment of 3/29/18).  That sentence was affirmed by the Fourth Circuit in a per curiam opinion issued on January 9, 2019.  ECF 2144.

### B.  Trial, first appeal, and remand

On February 5, 2015, a jury convicted Young of racketeering conspiracy, in violation of 18 U.S.C. § 1962(d); conspiracy to distribute controlled substances, in violation of 21 U.S.C. § 846; and money laundering conspiracy, in violation of 18 U.S.C. § 1956(h).  The jury also convicted four codefendants of racketeering conspiracy and related offenses.

As noted, the Fourth Circuit affirmed the convictions in an unpublished opinion.  *See United States v. Carrington*, 700 F. App'x 224 (4th Cir. 2017).  In its opinion, the Fourth Circuit said, *id.* at 225-26 (emphasis added):

> For a number of years, the Black Guerilla Family ("BGF"), a prison and street gang, ran a criminal enterprise inside the Baltimore City Detention Center. With the help of complicit correctional officers and other Detention Center employees, BGF inmates were able to smuggle narcotics, cell phones, and other contraband into the facility, and to use their dominant position to control other inmates and to support gang members on the outside . . . From 2007 through 2013, the Baltimore City Detention Center was home to a sprawling criminal enterprise led by the [BGF]. BGF members, correctional officers, and other jail employees all played central roles in the enterprise. BGF members bribed correctional officers to smuggle into the facility contraband supplied by gang members on the outside, including drugs, tobacco, and cell phones . . . And BGF used its position within the Detention Center to assist gang members outside the jail, financially supporting BGF with profits from narcotics trafficking and coordinating outside criminal activity. In exchange for their cooperation in this extensive BGF enterprise, Detention Facility employees were paid with "Green Dot MoneyPak" cards, prepaid debit cards available at retail stores . . . *Joseph Young and Russell Carrington were inmates and members of BGF: Young, a high
> -ranking BGF member, sold controlled substances in the jail* . . . Witnesses also testified to the participation of Carrington and Young as BGF members . . . .

Although the Fourth Circuit affirmed Young's convictions, it vacated his sentence. In its view, the original sentencing court failed to resolve disputed factual matters that were pertinent to the calculation of Young's advisory sentencing guidelines range. *Id.* at 234.

## C. Resentencing and second appeal

On remand, counsel for both sides filed numerous motions, exhibits, and memoranda. *See* Docket, beginning at ECF 2006. Between November 28, 2017 and March 28, 2018, I conducted several hearings. *See* ECF 2019; ECF 2021; ECF 2036; ECF 2041; ECF 2046; ECF 2078; ECF 2089. And, on March 22, 2018, I issued a forty-five page Memorandum Opinion (ECF 2085), in which I reviewed, *inter alia*, the evidence as to the drug quantity foreseeable to Young. *Id.* at 12-35. I concluded, *id.* at 35:

> Based on the evidence as to Young's personal involvement with drug trafficking during his incarceration; Young's stature in BGF, as a Bushman who outranked White and a person with considerable authority, particularly as to the floor of BCDC where he was detained; BGF's extensive drug trafficking organization at BCDC, of which Young was a part; and the many participants in the conspiracy, I am satisfied that the smuggling of Percocet pills into BCDC was within the scope of the jointly undertaken criminal enterprise and in furtherance of it. Moreover, as to Young, the criteria of U.S.S.G. § 1B1.3(a)(1)(B)(i)-(iii) have been met with respect to a drug quantity of at least Level 20, which only requires 300 Percocet pills of 30 milligrams each, or 600 Percocets of 15 milligrams each. Put another way, this drug quantity was clearly foreseeable to Young.

In addition, I found that Young was subject to certain upward adjustments under the United States Sentencing Guidelines ("U.S.S.G."), including a two-level upward adjustment based on evidence that he used violence, made a credible threat to use violence, or directed the use of violence, and a two-level increase as to the racketeering count, under U.S.S.G. § 2S1.1(b)(2)(B). *Id.* at 35-38. Further, I found that Young was subject to a three-level upward adjustment based on his role in the offense, although the Presentence Report (ECF 1643, "PSR") awarded a four-level upward adjustment. *See* ECF 1643, ¶ 29. Therefore, I found that Young had a final offense level

of 31.  ECF 2085 at 41-43.  And, although the PSR (ECF 1643) concluded that Young had a criminal history category of V (*id.* ¶ 44), I determined that his criminal history category was a IV. ECF 2085 at 43-44.

As noted, at the resentencing on March 28, 2018, I sentenced Young to concurrent terms of imprisonment of 170 months.  That sentence was below the government's recommendation of 188 months and below the original sentence of 180 months.  An amended judgment was entered on March 29, 2018.  ECF 2091.

Young filed a notice of appeal to the Fourth Circuit on April 4, 2018.  ECF 2095.  On January 9, 2019, in per curiam decision, the Fourth Circuit affirmed the sentence.  ECF 2144.  The mandate issued on January 31, 2019.  ECF 2147.

## II.    Legal Standard

### A.

Section 2255(a) of Title 28 of the United States Code provides relief to a prisoner in federal custody only on specific grounds: that the sentence was imposed in violation of the Constitution or laws of the United States; that the court was without jurisdiction to impose such a sentence; that the sentence was in excess of the maximum authorized by law; or that the sentence is otherwise subject to collateral attack.

Pursuant to 28 U.S.C. § 2255(b), the court must hold a hearing "[u]nless the motion and the files and records conclusively show that the prisoner is entitled to no relief. . . ."  *See*, *e.g.*, *United States v. White*, 366 F.3d 291, 302 (4th Cir. 2004).  Courts have determined that a hearing is not necessary where "the motion . . . fail[s] to allege sufficient facts or circumstances upon which the elements of constitutionally deficient performance might properly be found [or] where the defendant has failed to present any affidavits or other evidentiary support for the naked

assertions contained in his motion." *United States v. Taylor*, 139 F.3d 924, 933 (D.C. Cir. 1998) (internal quotation marks and citation omitted); *accord United States v. McGill*, 11 F.3d 223, 225-26 (1st Cir. 1993). On the other hand, a hearing is generally "required when a movant presents a colorable Sixth Amendment claim showing disputed material facts and a credibility determination is necessary to resolve this issue." *United States v. Robertson*, 219 Fed. App'x 286, 286 (4th Cir. 2007); *see United States v. Ray*, 547 Fed. App'x 343, 345 (4th Cir. 2013).

In reviewing the Motion, the Court is mindful that a self-represented litigant is generally "held to a 'less stringent standard' than is a lawyer, and the Court must liberally construe his claims, no matter how 'inartfully' pled." *Morrison v. United States*, RDB-12-3607, 2014 WL 979201, at *2 (D. Md. Mar. 12, 2014) (internal citations omitted); *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (stating that claims of self-represented litigants are held "to less stringent standards than formal pleadings drafted by lawyers"); *Bala v. Commonwealth of Virginia Dep't of Conservation & Recreation*, 532 F. App'x 332, 334 (4th Cir. 2013) (same). Nevertheless, in my view, no hearing is necessary to resolve the Petition.

**B.**

Young claims that his attorney provided ineffective assistance of counsel. Ineffective assistance of counsel is a well recognized basis for relief under § 2255. *See generally Missouri v. Frye*, 566 U.S. 133 (2012); *Lafler v. Cooper*, 566 U.S. 156 (2012); *Padilla v. Kentucky*, 559 U.S. 356 (2010). This is because the Sixth Amendment to the Constitution guarantees a criminal defendant the effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *see also Buck v. Davis*, _____ U.S. _____, 137 S. Ct. 759, 775 (2017).

To mount a successful challenge under 28 U.S.C. § 2255 based on a Sixth Amendment claim of ineffective assistance of counsel, a petitioner must satisfy the two-pronged test set forth in *Strickland*, 466 U.S. at 687–88. *See Williams v. Taylor*, 529 U.S. 362, 390 (2000); *United States v. Winbush*, 922 F.3d 227, 229 (4th Cir. 2019); *United States v. Carthorne*, 878 F.3d 458, 465 (4th Cir. 2017); *United States v. Powell*, 850 F.3d 145, 149 (4th Cir. 2017). First, the petitioner must show that counsel's performance was deficient. Second, the petitioner must show that he was prejudiced by the deficient performance. *Strickland*, 466 U.S. at 687; *see Buck*, 137 S. Ct. at 775; *Chaidez v. United States*, 568 U.S. 342, 348 (2013); *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000); *Hill v. Lockhart*, 474 U.S. 52, 57 (1985); *Winbush*, 922 F.3d at 229; *Powell*, 850 F.3d at 149; *United States v. Rangel*, 781 F.3d 736, 742 (4th Cir. 2015); *United States v. Dyess*, 730 F.3d 354, 361 (4th Cir. 2013); *United States v. Baker*, 719 F.3d 313, 318 (4th Cir. 2013); *Richardson v. Branker*, 668 F.3d 128, 139 (4th Cir. 2012); *United States v. Higgs*, 663 F.3d 726, 735 (4th Cir. 2011).

The first prong is known as the "performance prong," which relates to professional competence. The petitioner must demonstrate that his attorney's performance fell "below an objective standard of reasonableness," as measured by "prevailing professional norms." *Strickland,* 466 U.S. at 688; *see Harrington v. Richter*, 562 U.S. 86, 104 (2011); *Powell*, 850 F.3d at 149. The central question is whether "an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Richter*, 562 U.S. at 88 (quoting *Strickland*, 466 U.S. at 690).

As the Supreme Court recently reiterated, the "first prong sets a high bar." *Buck*, 137 S. Ct. at 775; *see also Powell*, 850 F.3d at 149. In *Padilla*, the Court said, 559 U.S. at 371: "Surmounting *Strickland's* high bar is never an easy task." Notably, a "lawyer has discharged his

constitutional responsibility so long as his decisions fall within the 'wide range of professionally competent assistance.'" *Buck*, 137 S.Ct. at 775 (citation omitted). Consequently, the performance prong is "'difficult'" to establish. *Lawrence v. Branker*, 517 F.3d 700, 709 (4th Cir. 2008) (quoting *James v. Harrison*, 389 F.3d 450, 457 (4th Cir. 2004)).

To satisfy the high bar, the burden is on the petitioner to establish "'that counsel made errors so serious that his "counsel" was not functioning as the "counsel" guaranteed by the Sixth Amendment.'" *Richter*, 562 U.S. at 88 (quoting *Strickland*, 466 U.S. at 687). Notably, "the *Strickland* standard must be applied with scrupulous care," *Richter*, 562 U.S. at 105, and "the standard of judging counsel's representation is a most deferential one." *Id.* Indeed, "[k]eenly aware of the difficulties inherent in evaluating counsel's performance, the Supreme Court has admonished that courts 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Lawrence*, 517 F.3d at 708 (quoting *Strickland,* 446 U.S. at 689)); *see Cullen v. Pinholster*, 563 U.S. 170, 189 (2011); *Richter*, 562 U.S. at 104; *Lee v. Clarke*, 781 F.3d 114, 122 (4th Cir. 2015).

Second, the petitioner must show that his attorney's deficient performance "prejudiced [his] defense." *Strickland*, 466 U.S. at 687. To satisfy the "prejudice prong," a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694; *see also Buck*, 137 S. Ct. at 776; *Lafler*, 566 U.S. at 163; *Lockhart v. Fretwell*, 506 U.S. 364, 369-70 (1993). "A reasonable probability is a probability sufficient to undermine confidence in the outcome" of the proceedings. *Strickland*, 466 U.S. at 687. Therefore, a petitioner is not entitled to post-conviction relief based on prejudice where the record establishes that it is "not reasonably likely that [the alleged error] would have

made any difference in light of all the other evidence of guilt." *Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010).

A court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Strickland*, 466 U.S. at 697. Nor must a court address both components if one is dispositive. *Jones v. Clarke*, 783 F.3d 987, 991 (4th Cir. 2015). This is because failure to satisfy either prong is fatal to a petitioner's claim. As a result, "there is no reason for a court...to address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697.

## C.

"[A]n error of law does not provide a basis for collateral attack unless the claimed error constituted 'a fundamental defect which inherently results in a complete miscarriage of justice.'" *United States v. Addonizio*, 442 U.S. 178, 185 (1979) (quoting *Hill*, 368 U.S. at 428). In other words, the movant must establish (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law so fundamental as to render the entire proceeding invalid. *Moss v. United States*, 323 F.3d 445, 454 (6th Cir. 2003).

Moreover, the scope of collateral attack under § 2255 is far narrower than on appeal, and a "'collateral challenge may not do service for an appeal.'" *Foster v. Chatman*, ___ U.S. ___, 136 S. Ct. 1737, 1758 (2016) (quoting *United States v. Frady*, 456 U.S. 152, 165 (1982)). Thus, any failure to raise a claim on direct appeal constitutes a procedural default that bars presentation of the claim in a § 2255 motion, unless the petitioner can demonstrate "cause and actual prejudice resulting from the errors of which he complains," or "actual innocence." *United States v. Pettiford*, 612 F.3d 270, 280 (4th Cir. 2010) (citing *United States v. Mikalajunas*, 186 F.3d 490, 492-93 (4th Cir. 1999)). *See Bousley v. United States*, 523 U.S. 614, 621 (1998) ("Habeas review is an

extraordinary remedy and will not be allowed to do service for an appeal.") (internal quotations and citations omitted); *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *see also Dretke v. Haley*, 541 U.S. 386, 393 (2004); *Reed v. Farley*, 512 U.S. 339, 354 (1994) ("the writ is available only if the petitioner establishes 'cause' for the waiver and shows 'actual prejudice resulting from the alleged violation.'"); *Finch v. McKoy*, 914 F.3d 292, 298 (4th Cir. 2019) (discussing requirements for a claim of actual innocence); *United States v. Linder*, 552 F.3d 391 (4th Cir. 2009).

Under the "cause and prejudice" standard, the petitioner must show: (1) cause for not raising the claim of error on direct appeal; and (2) actual prejudice from the alleged error. *Bousley*, 523 U.S. at 622; *see also Dretke*, 541 U.S. at 393; *Reed*, 512 U.S. at 354; *Frady*, 456 U.S. at 167-68.

In order to show cause for failure to raise a claim of error on direct appeal, a petitioner must prove that "some objective factor external to the defense such as the novelty of the claim or a denial of effective assistance of counsel" impeded the efforts to raise the issue earlier. *Coleman v. Thompson*, 501 U.S. 722, 753 (1991); *see also Carrier*, 477 U.S. at 492 ("[C]ause . . . requires a showing of some external impediment preventing counsel from constructing or raising the claim."); *Mikalajunas*, 186 F.3d at 493 (movant must demonstrate "something external to the defense, such as the novelty of the claim or a denial of effect assistance of counsel"). Additionally, the alleged error cannot simply create "a *possibility* of prejudice," but must be proven to work to the petitioner's "*actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Frady*, 456 U.S. at 170 (emphasis in original). Put another way, prejudice does not support relief of a procedural default in the absence of a showing of cause. *Carrier*, 477 U.S. at 494; *Engle v. Isaac*, 456 U.S. 107, 134 n.43 (1982).

The actual innocence exception "only applies in limited circumstances." *United States v. Jones*, 758 F.3d 579, 583 (4th Cir. 2014). The Fourth Circuit recently said in the context of a habeas case under 28 U.S.C. § 2254:[4] "A valid actual innocence claim 'requires petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial.'" *Finch v. McKoy*, 914 F.3d 292, 298 (4th Cir. 2019) (quoting *Schlup v. Delo*, 513 U.S. 298, 325 (1995). Moreover, a petitioner must "'demonstrate that the totality of the evidence would prevent any reasonable juror from finding him guilty beyond a reasonable doubt, such that his incarceration is a miscarriage of justice.'" *Finch*, 914 F.3d at 298 (quoting *Teleguz v. Pearson*, 689 F.3d 322, 329 (4th Cir. 2012)). It is an "exacting standard," based on a "'holistic judgment about all the evidence'. . . ." *Finch*, 914 F.3d at 299 (quoting *House v. Bell*, 547 U.S. 518, 539 (2006)).

In order to show "actual innocence," then, the petitioner "must demonstrate actual factual innocence of the offense of conviction, *i.e.*, that petitioner did not commit the crime of which he was convicted; this standard is not satisfied by a showing that a petitioner is legally, but not factually, innocent." *Mikalajunas*, 186 F.3d at 494 (citing *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992)); *see also Bousley*, 523 U.S. at 623. Moreover, the petitioner must meet his burden by clear and convincing evidence. *Mikalajunas*, 186 F.3d at 494. In other words, a "petitioner must show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Jones*, 758 F.3d at 583 (emphasis added); *see Bousley*, 523 U.S. at 623.

### III. Discussion

---

[4] "[T]he grounds for relief under § 2255 are equivalent to those encompassed by § 2254 [and] § 2255 was intended to mirror § 2254 in operative effect." *Davis v. United States*, 417 U.S. 333, 344 (1974).

## A. The Contentions

Young contends that his trial and appellate attorney was ineffective for the following reasons: (1) counsel failed to object to the government's theory that being a member of BGF meant being a member of the charged conspiracy; (2) counsel failed to object to imposition of an enhancement under the sentencing guidelines for commission of a crime while on supervised release; (3) counsel did not know the basic elements of conspiracy; (4) counsel failed to timely advise him as to the maximum possible sentence; (5) counsel failed to provide Young with trial transcripts; (6) counsel's cross-examination at trial of witnesses Antoinette Phillips and Tavon White was deficient; and (7) counsel failed to challenge a two-level enhancement under U.S.S.G. § 2S1.1(b)(2)(B).

Young also claims that the government committed prosecutorial misconduct by equating all BGF members as coconspirators. And, he claims that he was incorrectly subjected a two-level upward adjustment due to a violation of Federal Rule of Evidence 404(b), as described on page 36 of the Court's Memorandum Opinion of March 22, 2018. *See* ECF 2085. There, the Court found that a two-level enhancement under U.S.S.G. § 2D1.1(b)(2) was applicable because Young "directed the use of violence." In this regard, the Court pointed to instances of Young's violent behavior, and referred to a letter found during a search of the bedroom of codefendant Raylanair Reese in May 2012, which Young now claims constituted a Rule 404(b) violation.

The government asserts that Young's claims of prosecutorial misconduct and a Rule 404(b) violation are procedurally barred as they were not raised in either appeal to the Fourth Circuit. ECF 2164 at 9. Moreover, it argues that even if these claims are not procedurally barred, they lack merit. In particular, the government notes that "for at least four of the ineffective assistance of

counsel claims, defense counsel did in fact do what the Defendant claims defense counsel failed to do." *Id.* at 9-10.

### B. Procedural Default

Young's claims regarding prosecutorial misconduct and an alleged Rule 404(b) violation were not raised on direct appeal, either during the first appeal or the second appeal. *See Carrington*, 700 F. App'x 224; ECF 2164-1 (defendant's brief for second appeal). A defendant who fails to raise a claim in the district court and on direct appeal is defaulted on that claim: ordinarily, it cannot be raised for the first time on collateral review. *Pettiford*, 612 F.3d at 280; *see also Sanchez-Llamas v. Oregon*, 548 U.S. 331, 350-51 (2006) ("The general rule in federal habeas cases is that a defendant who fails to raise a claim on direct appeal is barred from raising the claim on collateral review.").

"The Supreme Court has recognized an equitable exception to the [procedural default] bar . . . when a habeas applicant can demonstrate cause and prejudice, or actual innocence." *Pettiford*, 612 F.3d at 280 (citing cases). But, Young cannot demonstrate either "cause and prejudice" or "actual innocence."

As noted earlier, "The existence of cause for a procedural default must turn on something external to the defense, such as the novelty of the claim or a denial of effective assistance of counsel." *Mikalajunas*, 186 F.3d at 493; *see Carrier*, 477 U.S. at 492 ("[C]ause . . . requires a showing of some external impediment preventing counsel from constructing or raising the claim."); *Coleman v. Thompson*, 501 U.S. 722, 753 (1991). Additionally, the alleged error cannot simply create "a *possibility* of prejudice," but must be proven to work to the petitioner's "*actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Frady*, 456 U.S. at 170 (emphasis in original).

In this case, most of the issues raised here by Young were previously raised by his lawyer. But, to the extent that they were not, there were no "external impediments" that impeded counsel's ability to address the matters on direct appeal." *Pettiford*, 612 F.3d at 281. Moreover, Young has offered no reason why these claims were not raised on direct appeal. Nor has Young claimed his *factual* innocence of the underlying crime. Thus, he cannot excuse his procedural default on actual innocence grounds.

### C. Ineffective assistance of counsel

#### 1. Membership in BGF; membership in the conspiracy

Young complains that his lawyer failed to argue that membership in BGF did not establish membership in the conspiracy. This contention is belied by the record.

Defense counsel repeatedly argued at trial and at the resentencing that membership in BGF did not establish membership in the charged conspiracy. For example, during defense counsel's closing argument, he said: "This is not a conspiracy to be a member of the Black Guerilla Family. The judge will instruct you on that. The judge has already, several times, told you that being a member of BGF is not the same as being in the RICO conspiracy. They're not the same." *See* ECF 1772 at 84. Defense counsel also stated: "I could spend the next 20 minutes arguing that he's not, that this stuff in his cell isn't really relevant, that it's not in his handwriting. I'm not going to do that because it doesn't matter because BGF and RICO are not the same thing." *See id.* at 86; *see also id.* at 89, 91.

Moreover, in a letter from defense counsel to the United States Probation Officer on March 13, 2015, which Young attached as "Exhibit C" to his Petition, defense counsel wrote: "Thus, although the testimony was that Mr. Young was a leader in BGF, there was no evidence that Mr. Young was a leader in Mr. White's racketeering conspiracy. This distinction is critical for

sentencing purposes because being a member of BGF is not illegal *per se* and Mr. Young was not convicted of being a BGF member." *See* ECF 2159-2 at 2.

Similarly, in the sentencing memorandum submitted by defense counsel on October 27, 2017 (ECF 2016), defense counsel wrote the following, *id.* at 8, 9 and 25:

- "Therefore keeping Mr. Young's role in BGF separate from any role he had in the RICO drug conspiracy is critical to determining his offense level under count one."

- "This distinction is critical for sentencing purposes because being a member of BGF is not illegal per se and Mr. Young was not convicted of being a BGF member."

- "The defense position is that being in BGF is not illegal and was not charged in the indictment."

And, during a resentencing hearing held on November 28, 2017, the Court was well aware of defense counsel's position. The Court said: "I understand your argument, [counsel], to be that the defendant's role in BGF is not the same as his role in the RICO drug conspiracy, and that the government conflated them. . . . But your point is just being a high-ranking BGF member doesn't mean he was a high-ranking member of the conspiracy." *See* ECF 2164-2 at 2.

Thus, as the government puts it, defense counsel "strenuously, repeatedly, and consistently argued that membership in BGF did not equate to membership in the RICO conspiracy." ECF 2164 at 12. This contention is devoid of merit.

2. *Enhancement based on commission of a crime while under a criminal justice sentence*

Young complains that defense counsel failed to object to an "enhancement for being charged while on supervised release" and that his correct criminal history category was IV, rather than V, as set forth in the PSR. ECF 2159 at 2. Notably, the Court agreed with Young. I found that Young's criminal history category was in fact IV, not V.

In the Memorandum Opinion of March 22, 2018 (ECF 2085), I noted that the defense claimed that two points were erroneously added to Young's criminal history score, and a criminal history category of V was inaccurate. The error occurred because Young's probation for the 2007 conviction, which led to the two points, "had ended by the time he arrived at BCDC in 2012." ECF 2085 at 43. Of import here, I also said, *id.* at 44: "I concur with the defense that the PSR miscalculated Young's criminal history score when it added two points under § 4A1.1(d). The proper criminal history score is eight, resulting in a criminal history category of IV."

In view of the foregoing, I agree with the government that Young "cannot sustain his burden regarding this claim as defense counsel did object and was successful as the Court reduced the Defendant's criminal history category to IV." ECF 2164 at 14.

### 3. The elements of conspiracy

Young contends that defense counsel provided ineffective assistance because he did not know the basic elements of conspiracy. Petitioner is grasping at straws. This is like bread and butter for a seasoned criminal defense attorney, such as defense counsel here.

To establish a RICO conspiracy, the government must prove "that each defendant knowingly and willfully agreed that he or some other member of the conspiracy would commit at least two racketeering acts." *United States v. Mouzone*, 687 F.3d 207, 218 (4th Cir. 2012). "To prove a conspiracy under 21 U.S.C. § 846, the government must prove (1) an agreement between two or more persons to engage in conduct that violates a federal drug law, (2) the defendant's knowledge of the conspiracy, and (3) the defendant's knowing and voluntary participation in the conspiracy." *United States v. Strickland*, 245 F.3d 368, 384–85 (4th Cir. 2001).

In the defense sentencing memorandum of October 27, 2017 (ECF 2016), defense counsel said: "Under federal conspiracy law, a person can be found guilty with any slight connection to a

conspiracy so long as the person knows the activities of the conspiracy and agrees to participate."
*Id.* at 23 n.6. As the government observes, this statement "is entirely consistent with the elements
of RICO conspiracy, drug distribution conspiracy and money laundering conspiracy." ECF 2164
at 14.

Moreover, to the extent that Young claims that he received ineffective assistance as to the
issue of the drug quantity attributable to Young, that contention is belied by Young's initial success
in his first appeal and by filings of defense counsel on remand on October 27, 2017, and November
17, 2017. *See* ECF 2016 at 16; ECF 2032. In both filings, defense counsel indicated that
determination of the quantity of drugs attributable to Young depended on reference to U.S.S.G. §
1B1.3, titled "Relevant Conduct (Factors that Determine the Guideline Range")." *See also* ECF
2085 at 12.

Defense counsel's conduct at trial and his submissions made clear that he understood the
elements of conspiracy *and* the relevant guidelines provisions used to determine drug quantity
attributable to Young. Indeed, drug quantity forseeable to Young was at the heart of the
resentencing. Therefore, Young cannot sustain this claim.

### 4. Advice as to the maximum possible sentence

Young asserts that defense counsel failed to advise him as to the maximum possible
sentence that he would face on conviction and, as a result, he rejected a plea offer of 65 months
from June 10, 2014.[5] However, even if defense counsel failed to advise Young of the maximum
possible penalties, Young cannot show prejudice because he was advised of the maximum possible

---

[5] The government asserts that no formal plea offer was ever extended to the defendant.
ECF 2164 at 15 n.5. Prior to trial, counsel for the parties had discussions regarding possible
resolution of that case. However, according to the government, these discussions did not result in
a formal plea offer to Young.

penalties by U.S. Magistrate Judge Timothy J. Sullivan on August 12, 2014, during the initial appearance and arraignment proceeding regarding the Second Superseding Indictment. *See* ECF 937; ECF 938; *see also United States v. Foster*, 68 F.3d 86, 88 (4th Cir. 1995) (finding no prejudice on a claim that defense counsel failed to advise defendant he could be sentenced as a career offender since "if the trial court properly informed Foster of the potential sentence he faced, he could not be prejudiced by any misinformation his counsel allegedly provided him"); *White v. United States*, 2015 WL 13735100, at *4 (E.D.N.C. Nov. 18, 2015) ("Assuming Petitioner's counsel failed to advise him regarding potential sentencing enhancements, he cannot show prejudice because the court fully advised him of his potential exposure during the Rule 11 colloquy"); *Thomas v. United States*, 2012 WL 525535, at *2 (E.D.N.C. Feb 16, 2012) (by advising the petitioner "of the maximum penalties on each count to which he pled guilty", the "court cured any deficiencies on counsel's part, and petitioner was not prejudiced").

This claims is without merit.

### 5. *Trial transcripts*

Young argues that defense counsel provided ineffective assistance by failing to provide him with trial transcripts. Even assuming that defense counsel failed to provide Young with trial transcripts, Young has not identified any authority for the contention that this alleged conduct fell below "an objective standard of reasonableness."

As the government observes, Young was present at trial. ECF 2164 at 17. Moreover, the second appeal to the Fourth Circuit concerned the resentencing, not the trial. *See* ECF 2159-2 at 14. Thus, Young cannot sustain this claim. *See Rogers v. Bell*, 2011 WL 3348073, at *2 (W.D. Mich. July 29, 2011) (counsel's "failing to send Mr. Rogers the transcripts in his possession—

assuming this is in fact what occurred—does not amount to an error so serious that counsel was no longer functioning as counsel").

### 6. *Cross examination of Antoinette Phillips and Tavon White*

Young contends that he received ineffective assistance regarding defense counsel's examination of two trial witnesses – Antoinette Phillips and Tavon White.

Notably, "decisions regarding trial tactics and strategy, such as . . . whether and how to cross-examine a witness . . . are the exclusive province of the attorney, after consultation with the client . . . A claim of ineffective assistance of counsel does not open the flood gates to second guessing the tactics of trial lawyers." *Harford v. Angelone*, 244 F. Supp.2d 606, 613 (E.D. Va. 2002). Moreover "trial strategy decisions are not evaluated 'through the distorting effects of hindsight.'" *Winston v. Kelly*, 592 F.3d 535, 544 (4th Cir. 2010) (quoting *Yarbrough v. Johnson*, 520 F.3d 329, 337 (4th Cir. 2008)).

Young argues that defense counsel provided ineffective assistance by failing to ask Phillips about a mug shot of co-defendant Raylanair Reese, found during a search of Young's cell at BCDC in June 2012, where the mug shot was dated a week after the search of the cell. Young overlooks that defense counsel re-called Phillips during the defendant's case and asked about the mug shot being dated six days later than the search. *See* ECF 1770 at 9-11; ECF 2164-4.[6]

In addition, Young claims that defense counsel provided ineffective assistance by asking Tavon White, the government's key witness, if Young ever gave drugs to White. First, the Young cannot establish that this conduct fell below "an objective standard of reasonableness" as defense counsel had a reasonable basis to ask the question. As defense counsel explained during his closing

---

[6] According to the government, Reese's mugshot was introduced into evidence as Trial Exhibit Y-3. *See* government's Trial Exhibit List, ECF 1411 at 11.

argument, this topic had not been covered in White's prior meetings with government counsel or agents and so defense counsel believed that White would have answered the question differently. See ECF 1772 at 97-98. Further, during defense counsel's closing argument, defense counsel argued that, given that White appeared to disclose for the first time during cross-examination that he had received drugs directly from Young, White was not credible. Defense counsel argued, *id.*:

> I asked Tavon, You never got any pills from Mr. Young, right? Why? Why would I ask such a stupid question? I'll tell you why. Because I looked at every single one of his six interviews and he never, ever, ever, ever, ever said he got pills from Mr. Young. He admitted that on the stand. He'd never said that before.
>
> And then on direct examination, he said, he was asked, Who was smuggling for Mr. Young? Kimberly Dennis. What was she smuggling? Tobacco. Do you know anything about pills? I don't know. Was anyone else bringing anything else in for Mr. Young? No.
>
> So it seems logical that if only Ms. Dennis was bringing stuff in for him and only tobacco was, and Tavon didn't know about pills, and no one else brought anything for him, that Tavon never got any pills from Mr. Young. That's what I thought. That's why I asked the question.
>
> But suddenly, for the first time ever, Mr. Young is coming up three flights of stairs to bring pills to Tavon, for free. For free. He's just giving him a pill. All these conversations he's having with his girlfriend about what he wants and the 10s and the things that he's taking, but he's going to go upstairs to give Tavon, a guy he doesn't even agree with, he's just going to hand him pills? That doesn't even come out in direct.
>
> The government had six meetings with him, plus three more to prepare him for trial. And it seemed to me, before I asked the question, that if, in fact, he had ever said "I got pills from Mr. Young", they would have asked him that on direct examination, or directed him to say it, depending on how you see the case. But he would have been asked that.
>
> So I'll leave it to you to decide if that makes any sense and whether it is enough to support a federal criminal verdict. Because this is not do you think it might have happened or you think it could have happened. This is beyond a reasonable doubt for a federal conviction. Is that comment, is that very new comment by Mr. White enough for you to, to support your verdict? Can you walk out of the courtroom when you're finished and say, You know what, Mr. White said it, I believe it beyond a reasonable doubt.

> And other people will talk about Mr. White's credibility. My point is simply that given what he said on direct, that he had no knowledge of pills with Mr. Young, and the only thing he knew about was tobacco, whether that makes any sense at all. And it is certainly uncorroborated.

*See Spicer v. Roxbury Correctional Institute*, 194 F.3d 547, 562 (4th Cir. 1999) (rejecting ineffective assistance claim that defense counsel should have moved to exclude witness's testimony rather than cross-examine witness, because defense attorney "might reasonably have believed that, given the flimsiness of [the witness's] identification, cross-examining [the witness] would be more devastating to the government than excluding his testimony"); *Winston*, 592 F.3d at 544 (rejecting ineffective assistance of counsel claim based on trial counsel's strategy to attack witness's credibility rather than call other witnesses).

In any event, even assuming that defense counsel's cross examination of White fell below an objective standard of reasonableness, Young cannot demonstrate prejudice, given the substantial evidence of Young's guilt. As noted in my Memorandum Opinion of March 28, 2018 (ECF 2085), the evidence included the following, *id.* at 19-35:

- Intercepted calls and texts between defendant and codefendant Kimberly Dennis, a correctional officer at BCDC, and codefendant Raylainair Reese, defendant's girlfriend. *Id.* at 23.

- Intercepted calls and texts illustrating that there was an "alliance" or "three-way deal" between  Dennis, inmate Derius Duncan housed on C section, and the defendant, housed on D section, because Dennis brought Percocet pills to both Duncan and the defendant, so that it was correct to attribute the contraband to defendant, including Percocet pills, that Dennis brought to Duncan. *Id.*

- Calls between defendant and Dennis on October 24, 2012, including the defendant trying to recruit Dennis. *Id.* at 23-24.

- Reese provided Young with Percocet pills and buprenorphine strips and documents, as evidenced from a search of Reese's residence in May 2012, which showed that Young was involved with drug trafficking prior to July 2012. *Id.* at 24.

- A letter dated March 20, 2012, between the defendant and Reese in which he thanked her for "dot's" (Green Dot numbers) and told her that someone "will do the pills for me." *Id.* at 24. The letter also included a "P.S." that said: "She just came back . . . call her $200 for 50 pills." *Id.*

- A letter from the defendant to Reese, dated April 10, 2012, in which the defendant stated he will get 20 pills on Monday and the "more the better," and a letter of April 15, 2012, from the defendant to Reese, in which the defendant stated "we need as many pills as we can get . . . ." *Id.* at 24.

- Text messages between the defendant and Reese on November 7, 2012, in which Reese advised that she found "a[n] old lady with the buke [sic] strips, 4$ each!!!" and the defendant responded "Get some." *Id.* at 25.

- A phone call of November 13, 2012, between the defendant and Reese in which Young stated, in reference to Percocet pills, "I don't want no 30's" but instead wanted three 10s. *Id.*

- A call between Young and Dennis on November 14, 2012, in which the defendant stated he was caught with pills hidden in trash he was carrying and he had to "throw the pills in [his] mouth," as well as a call of December 1, 2012, in which Reese told the defendant she could have brought ten "percs" for him but would bring them the following week. *Id.*

- Phone calls and texts between Young and Reese on December 3, 2012, in which the two discussed getting "bute strips" and "percs." *Id.* at 25-26.

- Former BCDC correctional officer Jasmine Jones's trial testimony in which she stated that: (1) she saw the defendant sell contraband; and (2) Jones knew that correctional officer Briscoe brought Young contraband tobacco and pills. *Id.* at 28.

- Former BCDC inmate Randolph Edmond's trial testimony, in which he stated that: (1) he was detained at BCDC from July to December 2012; (2) he was involved in smuggling tobacco, marijuana and strips at BCDC; (3) BGF controlled the smuggling at BCDC; (4) Edmond's cell mate "Buck-em" was a BGF inmate involved in contraband smuggling of marijuana, Percocet pills, strips, tobacco and cell phones; (5) Buck-em was a customer of the defendant; (b) Edmonds heard Buck-em order contraband from Young, including strips, pills and marijuana; and (7) Edmonds corroborated White's testimony that Young transported contraband by tying a string around it and transporting it up and down pipes between the floors. *Id.* at 29.

- Former correctional officer Tanierdra Finch testified at trial that the defendant had a contraband business and he tried to recruit her to bring in marijuana. *Id.* at 30.

- Former correctional officer Milsheena Peoples testified at trial that: (1) she smuggled contraband, including pills, into BCDC; (2) the defendant asked her to direct him to someone who could bring in contraband; (3) she witnessed Reese bring in something to the defendant while in the visitor room; and (4) Young and Reese were constantly asking another correctional officer about bringing in stuff. *Id.* at 30.

- An intercepted phone call on November 7, 2012, between the defendant and Cyrus Beads in which the defendant discussed getting a contraband "can" of either tobacco or marijuana. *Id.* at 30-31.

- Intercepted calls between White and Will Barnett, a high ranking BGF member not incarcerated at BCDC, and between White and the defendant, which illustrated the animosity between White and the defendant. *Id.* at 31-34. In a call on January 4, 2013, between White and the defendant, White indicated that they have to come to a consensus, as he does not like to make decisions on his own. *Id.* at 34-35.

### 7.   *U.S.S.G. § 2S1.1(b)(2)*

Young argues that he received ineffective assistance because his lawyer failed to challenge a two-level upward adjustment under U.S.S.G. § 2S1.1(b)(2). But, his attorney challenged the application of this adjustment in his letter of April 20, 2015, to U.S. Probation (ECF 2164-5); in his sentencing memorandum of October 27, 2017 (ECF 2016); and in connection with the resentencing. *See* ECF 2085 at 6, 38. This Court, as well as the Fourth Circuit, observed that defense counsel challenged the two-level upward adjustment under U.S.S.G. § 2S1.1(b)(2). *See* ECF 2085 at 4 n.4; *Carrington*, 700 F. App'x at 234 n.3.

According to Young, the two-level upward adjustment under U.S.S.G. § 2S1.1(b)(2) does not apply, pursuant to Application Note 3(C). Application Note 3(C) provides: "Subsection (b)(2)(B) shall not apply if the defendant was convicted of conspiracy under 18 U.S.C. § 1956(h) and the sole object of that conspiracy was to commit an offense set forth in 18 U.S.C. § 1957." Even if defense counsel did not object to the two-level upward adjustment on this particular

ground, Young cannot show that his conduct fell below an objective standard of reasonableness or prejudiced the defendant.

In Count Three of the Second Superseding Indictment (ECF 869), Young was charged with money laundering conspiracy, in violation of 18 U.S.C. § 1956(h). The Second Superseding Indictment alleged that Young and others conspired to commit money laundering, in violation of 18 U.S.C. § 1956(a)(1)(A)(I), and money laundering, in violation of 18 U.S.C. § 1956(a)(1)(B)(I).

As the government puts it, ECF 2164, at 24, "the *sole* object of the conspiracy *was not* to commit an offense set forth in 18 U.S.C. § 1957. Rather, the object of the conspiracy was to commit offenses set forth in Section 1956(a)(1). As such, Application Note 3(C) does not apply and the defendant cannot sustain this claim.[]" (Emphasis added by government).

### D. Prosecutorial Misconduct and Rule 404(b)

The government contends that Young has procedurally defaulted any claims of prosecutorial misconduct and Rule 404(b) violations. But, it adds that, even if the Court were to reach the merits of these claims, "they should be rejected." ECF 2164 at 25.

"The test for reversible prosecutorial misconduct generally has two components: that '(1) the prosecutor's remarks or conduct must in fact have been improper, and (2) such remarks or conduct must have prejudicially affected the defendant's substantial rights so as to deprive the defendant of a fair trial.'" *United States v. Chorman*, 910 F.2d 102, 113 (4th Cir. 1009) (internal citations omitted). As to Young, the government's theory of the case was that BGF controlled the flow of contraband within BCDC, including controlled substances; the defendant was a high raking member of BGF and personally participated in the distribution of contraband, including controlled substances; and, in view of the foregoing, a greater quantity of controlled substances was

reasonably foreseeable to Young. The government's conduct was not improper. Nor did the government's conduct deprive the defendant of a fair trial.

The defendant claims that he was incorrectly assessed a two-level upward adjustment due to a violation of Rule 404(b). *See* ECF 2085 at 36. In the Memorandum Opinion of March 22, 2018, the Court determined that Young was subject to a two-level enhancement under U.S.S.G. § 2D1.1(b)(2), because he "directed the use of violence." ECF 2085 at 36. The Court cited several instances of the defendant's violent behavior, including a letter found during a search of Reese's bedroom in May 2012. *See* ECF 2085 at 36. Young maintains that this constituted a Rule 404(b) violation. According to the defendant, admission of this evidence under Rule 404(b) was in error because it was "intrinsic" and not "extrinsic."

Fed. R. Crim. P. 404(b) is titled "Crimes, Wrongs, or Other Acts." Rule 404(b)(1) is titled "Prohibited Uses." It states: "Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Rule 404(b)(2) is titled "Permitted Uses; Notice In A Criminal Case." It says, in part: "This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."

Rule 404(b)(1) bars the introduction of evidence to prove criminal disposition. *Huddleston v. United States,* 485 U.S. 681, 686 (1988); *United States v. Bush*, ___ F.3d ___, 2019 WL 633695, at \*4 (4th Cir. Nov. 27, 2019); *United States v. Basham,* 561 F. 3d 302, 326 (4th Cir. 2009); *United States v. Sanchez*, 118 F.3d 192, 195 (4th Cir. 1997). It "prohibits the introduction of evidence of prior acts for the purpose of proving the character of a person." *United States v. Cooper*, 482 F.3d 658, 663 (4th Cir. 2007; *see also United States v. Hall*, 858 F.3d 254, 265 (4th Cir. 2017); *United*

*States v. Fuentes*, 808 F.3d 485, 493 (4th Cir. 2015); *United States v. Basham*, 561 F.3d 302, 326 (4th Cir. 2009).

However, as the Fourth Circuit said in *United States v. Byers,* 649 F.3d 197, 206 (4th Cir. 2011), Rule 404(b) is "a rule of inclusion," except as to evidence of other crimes or acts tending only to prove criminal disposition. *See also United States v. Sterling*, 860 F.3d 233, 246 (4th Cir. 2017); *United States v. Faulls*, 821 F.3d 502, 508-09 (4th Cir. 2016); *United States v. Young*, 248 F.3d 260, 271-72 (4th Cir. 2001). It "explicitly allows evidence that furnishes proof of the defendant's knowledge and the 'absence of mistake or accident.'" *Cooper*, 482 F.3d at 663 (citing Rule 404(b)).

In the context of Rule 404(b), the government must satisfy a four-part test to introduce extrinsic evidence of prior acts. *See United States v. Queen*, 132 F.3d 991, 995 (4th Cir. 1997); *see also United States v. Cowden*, 882 F.3d 464, 472 (4th Cir. 2018). Such evidence is admissible if the court finds: (1) the evidence is relevant to an issue other than character, such as intent, identity or motive; (2) it is necessary to prove an element of the crime charged, or to prove context; (3) it must be reliable; 4) under FRE 403, the probative value must not be substantially outweighed by prejudice. *Queen*, 132 F.3d at 995, 997; *see Byers*, 649 F.3d at 206; *see also United States v. McBride*, 676 F.3d 385, 396 (4th Cir. 2012); *United States v. Lighty*, 616 F.3d 321, 352 (4th Cir. 2010); *United States v. Rooks*, 596 F.3d 204, 211 (4th Cir. 2010); *United States v. Siegel*, 536 F.3d 306, 317-18 (4th Cir. 2008).

Notably, "the provisions of Rule 404(b) are only applicable when the challenged evidence is extrinsic, that is, 'separate' from or 'unrelated' to the charged offense." *Bush*, 2019 WL 6333695, at *4. In other words, "'acts intrinsic to the alleged crime do not fall under Rule 404(b)'s

limitations on admissible evidence.'" *Id.* (quoting *United States v. Chin*, 83 F.3d 83, 87-88 (4th Cir. 1996)).

"Evidence of uncharged conduct is not other crimes evidence subject to Rule 404 if the uncharged conduct arose out of the same series of transactions as the charged offense, or . . . is necessary to complete the story of the crime on trial." *Basham*, 561 F.3d at 326 (internal quotations and citation omitted); *see United States v. Siegel*, 536 F.3d 306, 316 (4th Cir. 2008); *Chin*, 83 F.3d at 88. Such evidence is intrinsic because it is "inextricably intertwined" with evidence of the charged offenses and forms an integral part of the testimony concerning them. *Lighty*, 616 F.3d at 352 (internal quotation marks omitted).

In other words, evidence is "'inextricably intertwined with the evidence regarding the charged offense if it forms an integral and natural part of the witness's accounts of the circumstances surrounding the offenses for which the defendant was indicted.'" *Bush*, 2019 WL 6333695, at *4 (quoting *Lighty*, 616 F.3d at 352) (internal quotation marks omitted); *see McBride*, 676 F.3d at 396. Put another way, evidence is intrinsic when it "serve[s] to complete the story of the crime on trial." *United States v. Kennedy*, 32 F.3d 876, 886 (4th Cir. 1994) (internal quotation marks omitted); *see McBride*, 676 F.3d at 396. It is also regarded as intrinsic when the conduct is "part of a single criminal episode." *United States v. Otuya*, 720 F.3d 183, 188 (4th Cir. 2013).

Here, the evidence was introduced at trial as direct evidence of the charged conspiracy and not under Rule 404(b). It follows that there can be no Rule 404(b) violation, as the evidence was not admitted under Rule 404(b).

Moreover, there was no error by the Court in considering this evidence during resentencing, even if it had never been admitted at trial. In this regard, 18 U.S.C. § 3661 provides that a court may consider during sentencing evidence that was not presented at trial. As this Court said in its

Memorandum Opinion of March 22, 2018, "Section 3661 of Title 18 'codifies the longstanding principle that sentencing courts have broad discretion to consider various kinds of information.'" ECF 3085 at 18 (quoting *United States v. Watts*, 510 U.S. 148, 151 (1997) (per curiam) and citing *Pepper v. United States*, 562 U.S. 476, 487 (2011)).

## IV. Certificate of Appealability

Pursuant to Rule 11(a) of the Rules Governing Proceedings under 28 U.S.C. § 2255, the court is required to issue or deny a certificate of appealability ("COA") when it enters a final order adverse to the applicant. A COA is a "jurisdictional prerequisite" to an appeal from the court's earlier order. *United States v. Hadden*, 475 F.3d 652, 659 (4th Cir. 2007). In other words, unless a COA is issued, a petitioner may not appeal the court's decision in a § 2255 proceeding.[7]  28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b).

A COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see Buck v. Davis*, ___ U.S. ___, 137 S. Ct. at 773. Where the court denies a petitioner's motion on its merits, a petitioner satisfies this standard by demonstrating that reasonable jurists would find the court's assessment of the constitutional claims debatable or wrong. *See Tennard v. Dretke*, 542 U.S. 274, 282 (2004); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also Miller-El v. Cockrell*, 537 U.S. 322, 336-38 (2003).

Petitioner has not made a substantial showing of the denial of his constitutional rights. Therefore, I decline to issue a COA.

---

[7] The denial of a COA by the district court does not preclude Petitioner from seeking a COA from the appellate court.

An Order follows.

Date:   December 10, 2019

                                    /s/
                              Ellen Lipton Hollander
                              United States District Judge